IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHAEL WOODALL                                                     PLAINTIFF

v.                                            Civil No. 2:16-CV-02086

SGT. MILLER (Captain, Sebastian County               DEFENDANTS
Detention Center), MICHELLE MAKOSTA[1]
(Deputy Jailer, Sebastian County), and SGT.
DUMAS

**ORDER**

       Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 60).

**I. BACKGROUND**

       Plaintiff filed his Complaint on March 31, 2016, in the Eastern District of Arkansas. (ECF No. 2). His case was transferred to this District on April 12, 2016. (ECF No. 3). Plaintiff filed a Supplement to his Complaint clarifying the relief he was requesting on May 2, 2016. (ECF No. 6). Plaintiff filed a Motion to Amend his Complaint on July 6, 2016 (ECF No. 9), which was denied. (ECF No. 10). Plaintiff filed another Motion to Amend (ECF No. 28), which was granted in part on April 10, 2017.[2] (ECF No. 42). Plaintiff's proposed Amended Complaint was then filed as his Amended Complaint on April 10, 2017. (ECF No. 43).

       Plaintiff alleges Defendants failed to protect him from being assaulted by other inmates on two occasions while he was incarcerated in the Sebastian County Detention Center (SCDC). Plaintiff alleges these incidents occurred during the third and fourth week of December 2015 through January 2016. (ECF No. 43 at 6). Plaintiff alleges two kitchen supervisors labelled him

---

[1] Defendant Makosta's correct last name is Acosta. (ECF No. 62-1 at 1).
[2] Plaintiff's request to add Defendant Dumas was granted. His request to add other parties was denied as futile.

1

a snitch in front of other inmates, causing him to be beaten by those inmates. He alleges he reported this to Defendants, who did not remove him from the situation or punish anyone, resulting in his second beating at the hands of the same inmates. (*Id*.). Plaintiff alleges it is the custom of staff at SCDC to give the names of informants or suspected informants to other inmates so that the inmates will beat the informants. (*Id*. at 11).

Plaintiff alleges he was denied medical care for approximately two weeks after his beatings. (*Id*.). Plaintiff alleges it is the custom of SCDC to delay medical treatment for injuries for up to two to three weeks. (*Id*. at 12).

Plaintiff attached a document labelled "Statement of Facts Definitely Defined" to his Complaint form. In this document he alleges he was beaten first by James Dean, resulting in a blackened left eye and a bruised back. (*Id*. at 8). He alleges he reported the beating on the inmate kiosk[3] that night. (*Id*.). He alleges he was then beaten by three or four inmates for the second incident. He alleges he asked for help on the inmate kiosk again. (*Id*.).

Plaintiff proceeds on these claims in both official and personal capacity against all Defendants. (*Id*. at 6,11). He seeks compensatory and punitive damages. (*Id*. at 12).

Defendants filed their Motion for Summary Judgment on November 20, 2017. (ECF No. 60). On November 27, 2017, the Court entered an Order directing Plaintiff to respond to the Motion by December 18, 2017. (ECF No. 63). Plaintiff responded on December 20, 2017, but did not include his Required Statement of Disputed Facts with his Response. Instead, he included a copy of the "Statement of Facts Definitely Defined" previously attached to his Amended Complaint, a document labelled "Supporting Facts to My Claim," and several affidavits. (ECF

---

[3] Inmate requests and grievances, as well as SCDC responses to those items, are entered into kiosks located in the inmate pods and into officer terminals. Once submitted, those entries cannot be deleted or altered. (ECF No. 62-1 at 1).

2

No. 64). On March 7, 2018, the Court entered a Show Cause Order directing to Plaintiff submit his Statement of Disputed Facts by March 28, 2018. (ECF No. 66). Plaintiff submitted a document labelled Disputed Facts on March 29, 2018. (ECF No. 67).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

Defendants argue summary judgment should be granted in their favor for the following reasons: (1) Plaintiff failed to provide proof that any of the named Defendants were deliberately

indifferent to his safety or medical needs; and, (2) as there were no constitutional violations, he failed to provide proof that any custom or policy of Sebastian County was responsible for the violations. (ECF No. 61).

Plaintiff argues the facility violated its internal policies with his housing placement.[4] (ECF No. 64 at 1-2; ECF No. 67 at 1-2). He further argues he sought help after he was "jumped on and beaten by various individuals," but was put back into the same housing unit and "assaulted again by the same and other individuals." (ECF No. 67 at 2). Plaintiff argues the fact that the facility kiosk and other documents were printed on November 2, 2016, when the Incident Report was filed around January 25, 2016, is evidence that the facility is attempting to "cover up" facts. (ECF No. 64 at 4).

### A. Failure to Protect

Plaintiff's allegation that Defendants failed to protect him from the two assaults by inmates sometime during December 2015 through January 2016 is contradicted by his deposition testimony, grievance documents, and medical records.

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victims' safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

To prevail on his failure to protect claim, Plaintiff must satisfy a two-prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm"; and, (2) show that the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v.*

---

[4] As this claim was not raised in Plaintiff's Amended Complaint, it will not be addressed.

*Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong; instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v. Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Further, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Here, the record is clear that none of the Defendants had any knowledge of the two alleged incidents prior to their occurrence. In his deposition, Plaintiff testified he did not tell Defendant Miller about the incidents until after they had occurred. (ECF No. 62-2 at 57-58). He testified he went to Defendant Dumas' office only after the second incident, when he was brought there to discuss an injury to another inmate. (*Id*. at 59). He testified he did not have a claim against Defendant Acosta for failure to protect. Instead, he testified "[s]he didn't help me get medical. That was it." (*Id*. at 71). He testified her failure to secure medical care for him occurred after the second incident. (*Id*.).

Plaintiff's kiosk grievances likewise contradict any allegation that Plaintiff felt he was in danger or that Defendants were made aware he was at risk of assault. Plaintiff is remarkably unclear in both his Amended Complaint and his deposition as to the exact dates of the alleged assault incidents. Based on his deposition testimony, his grievances, and his "Statement of Facts

5

Definitely Defined," however, he appears to allege that the first incident occurred on January 3, 2016, and the second incident occurred on or shortly before January 12, 2016. (ECF No. 43 at 8; ECF No. 62-1 at 14; ECF No. 62-2 at 46).

Plaintiff's first grievance concerning any physical incident with another inmate was submitted at 7:58 a.m. on January 3, 2016. In it he states Miss Kasey from the kitchen said he was "snitchen" and "I got into a fight but that[']s no big deal." (ECF No. 62-1 at 14). Plaintiff's second grievance that day was submitted at 10:07 p.m. and states "I have been in a fight and its OK now. . . every thing is cool but now I will not work in the kitchen no more. . ." (*Id*.). Plaintiff's next relevant grievance was submitted at 11:42 a.m. on January 12, 2016. (ECF No. 62-1 at 16-17). Plaintiff states Miss Kasey "got me jumped 2 times and fired me 4 times and told inmates a lie she said I was a snitch. . . ." He alleged he talked to Defendant Dumas, but a picture was not taken. (*Id*. at 17). On January 13, 2016, Plaintiff states:

> [t]his makes the 3rd time and now a week and a half later I keep asking for picture to be taken of my eyes left on I have ask Kosta Miss Kosta ant others up front and thay are not seeming to care Miss Kasey meased up and I need to get picture of my body. . .

(*Id*. at 18) (errors in original). The response asked why he wanted pictures of his eye, and asked if he had been in an altercation. Plaintiff replied in the affirmative, and stated Dumas and others up front knew. (*Id*.). Plaintiff testified he was not involved in any further altercations and was moved to another pod four or five days after the second incident. (ECF No. 62-2 at 48, 62).

Thus, Plaintiff's testimony expressly stated that Defendants did not know about the alleged incidents until after both had occurred. His grievances on January 2 and 3 were filed after the first alleged incident occurred, and expressly stated the fight was "no big deal," and things were "OK" and "cool." He did not indicate he was at risk for another assault, ask for medical care, or ask for any other protective action to be taken. His January 12 and 13 grievances were likewise filed after

6

the alleged second incident occurred. All the grievances refer to the fight or "jumpings" as something that had already happened. Once Defendants were informed of the incidents, Plaintiff was moved to another pod. The record, therefore, contradicts Plaintiff's allegation that Defendants were aware of a substantial risk of harm to him and failed to respond reasonably to it.

Finally, as will be discussed more fully below, there was no evidence of any injury to Plaintiff's eye resulting from a fight or being "jumped."

As there is no evidence of deliberate indifference on the part of Defendants, they are entitled to summary judgment as a matter of law on Plaintiff's failure to protect claim.

### B. Denial of Medical Care

Plaintiff's allegation that he was denied medical care for two weeks after he was allegedly beaten is also contradicted by the record.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious

7

that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

In his deposition, Plaintiff testified that the first time he mentioned a medical problem and asked for medical care was in his grievance on January 12, 2016. (ECF No. 62-2 at 44, 46). In this grievance, Plaintiff alleged he was not able to see out of his left eye. (ECF No. 62-1 at 17).

8

His January 13, 2016, grievance asks for pictures of his eye but not for medical care. (*Id*. at 18). An incident report dated January 15, 2016, states Plaintiff was seen at the nurses' station claiming he had been hit in the eye a week ago and was complaining of blurry vision. He was examined by Cindy Moore, R.N. She found no issues with his peripheral vision, pupils were equal and reactive, there was nothing on the back of the eyeball, and no signs of abnormality were noted. Plaintiff exhibited 20/30 vision in the left eye and 20/25 in the right eye. This was the first time she had heard of any complaint of vision issues from Plaintiff, and she did not believe it had "anything to do with [an] altercation." (ECF No. 62-1 at 44). Another Incident Report completed later that day by Sgt. Taulbee stated he was called to medical to meet with Nurse Moore and Plaintiff. Taulbee states, "Plaintiff was checked out by medical and states he is satisfied by medical and has no further complaints." (ECF No. 62-1 at 35). Plaintiff filed no further grievances or requests for medical care concerning his eye. He was transferred to the Arkansas Department of Correction (ADC) on February 8, 2016. (ECF No. 62 at 1; ECF No. 62-2 at 108).

Plaintiff's ADC intake examination on February 9, 2016, noted no vision impairment issues or eye injuries. (ECF No. 62-3 at 6). On April 11, 2016, Plaintiff was seen at sick call for an unusual amount of "sleep" in his eyes and blurry vision. He attributed this to an altercation at SCDC and noted the current lawsuit against the facility. (*Id*. at 78). On examination, no swelling, redness, or abnormality, drainage, or discoloration was noted in the left eye. He was prescribed eyewash. (*Id*.). On April 18, 2016, Plaintiff was seen at sick call for a complaint of blurry vision and residue around the eye on awakening. Plaintiff reported it took several minutes for his vision to refocus upon awakening. Plaintiff was prescribed artificial tears and Visine-A drops, and an optometry consult was scheduled. (*Id*. at 49).

9

On May 18, 2016, Plaintiff underwent the optometry consult. (*Id*. at 111). Plaintiff's blurry vision was attributed to astigmatism. No inflammation or infection was seen. Some dry eye syndrome was noted, and artificial tears were prescribed. Plaintiff's eyes were within normal limits and no injuries were noted. (*Id*.).

Thus, Plaintiff's allegation that he was denied medical care for two to three weeks is contradicted by the record. Plaintiff first requested medical care on January 12, 2016. He was examined by Nurse Moore on January 15, 2016, and she noted no injuries or issues with his eyes. An Incident Report that same day noted Plaintiff was seen by Nurse Moore, he was satisfied with the medical evaluation, and he had no further complaints. The record does not indicate Plaintiff asked for any other medical care for his eye while he was at SCDC. At intake into the ADC on February 9, 2016, no eye injuries or vision impairment was noted. When Plaintiff complained of blurry vision from the incidents, he was seen by an optometrist who determined his blurry vision was caused by astigmatism.

As there is no evidence of deliberate indifference on the part of Defendants, they are entitled to summary judgment as a matter of law on Plaintiff's denial of medical care claim.

### IV. CONCLUSION

For these reasons, IT IS ORDERED that Plaintiff's claims are DISMISSED WITH PREJUDICE.

Judgment will be entered accordingly.

IT IS SO ORDERED this 29th day of June 2018.

*/s/ P. K. Holmes, III*
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE